# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

CLAYTON LEE WAAGNER,     )
                                )
      Petitioner,      )
                                )
    v.                 )     **Case No. 16-cv-02156**
                                )
UNITED STATES OF AMERICA,   )
                                )
      Respondent.     )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on Petitioner Clayton Lee Waagner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1).  A hearing on the Motion is not required because "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." Hutchings v. United States, 618 F.3d 693, 699–700 (7th Cir. 2010) (quotation omitted).  Because Petitioner is not entitled to relief, the § 2255 Motion is DENIED.  However, the Court will issue a certificate of appealability.

# I. **BACKGROUND**

After a jury trial in December 2000, Waagner was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possessing a stolen vehicle which had crossed a state line in violation of 18 U.S.C. § 2313(a). See United States v. Waagner, Central District of Illinois, Urbana Division, Case No. 99-cr-20042-HAB (hereinafter, Crim.), Verdict (d/e 77), PSR ¶3 (d/e 101).

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR found that Waagner qualified as an Armed Career Criminal under 18 U.S.C. § 924(e) because he had at least three prior convictions for crimes of violence, including two 1978 convictions for Ohio Aggravated Burglary, Case #CR-41373 and Case #CR-40374, and a 1992 conviction for Ohio Attempted Robbery, Case #91-CR-006898. PSR ¶¶41, 48-49, 51. Additionally, the PSR revealed that Waagner had a 1975 conviction for Virginia Statutory Burglary, and a 1978 conviction for Georgia Burglary. PSR ¶¶45, 50.

Due to the Armed Career Criminal Act ("ACCA") enhancement, the PSR concluded that under the then-mandatory sentencing

guidelines Waagner's offense level was 34 and his criminal history category was VI, resulting in a guideline imprisonment range of 262 to 327 months of imprisonment. PSR ¶104. Waagner's status as an Armed Career Criminal under § 924(e) increased his statutory imprisonment range from zero to ten years imprisonment to fifteen years to life imprisonment on Count 1.

On January 28, 2002, District Judge Harold Baker imposed a sentence of 327 months' imprisonment, followed by 5 years of supervised release. Waagner also pled guilty to escape in a separate case in the Central District of Illinois after he escaped from custody after his trial. See United States v. Waagner, Central District of Illinois, Urbana Division, Case No. 01-CR-20023-HAB. Waagner received a consecutive sentence of 37 months of imprisonment for the escape, resulting in a combined imprisonment sentence of 364 months. Waagner's convictions and combined sentence of 364 months were affirmed by the Seventh Circuit. United States v. Waagner, 319 F.3d 962 (7th Cir. 2003).

In addition to Waagner's convictions and sentences in the Central District of Illinois, Waagner is serving sentences pursuant to criminal judgments in three other federal district courts. In

2006, in the Middle District of Pennsylvania, Case Nos. 1:CR-01-191, 1:CR-06-145, 1:CR-06-147, 1:CR-06-203, and 1:CR-06-228, Waagner pled guilty to a litany of charges that had been pending in other courts and transferred to the Middle District of Pennsylvania where he had been indicted for bank robbery. He was initially sentenced to 400 months' imprisonment, to run concurrently with his sentence in this district. However, in 2016, his sentence was reduced to 250 months' imprisonment after Waagner filed an unopposed motion pursuant to 28 U.S.C. § 2255 in light of Johnson v. United States, 135 S. Ct. 2551 (2015). See United States v. Waagner, No. 1:01-cr-191 (M.D. Pa.), d/e 28, 31, 43. In Johnson, the Supreme Court held that the residual clause of the Armed Career Criminal Act is unconstitutionally vague. 135 S. Ct. at 2563. Waagner also has a sentence of 228 months' imprisonment imposed by the Eastern District of Pennsylvania, Case No. 1:02-cr-00582, which was ordered to be served concurrently with his sentence here.

Finally, Waagner has a sentence of 235 months' imprisonment imposed by the Southern District of Ohio, Case No. 1:02-cr-00007, which was ordered to be served consecutively with his sentence

here.  Waagner also filed a § 2255 Motion in his Southern District of Ohio case in light of <u>Johnson</u>.  However, this motion was denied on April 11, 2017.  <u>United States v. Waagner</u>, No. 1:02-CR-007, 2017 WL 1324608 (S.D. Ohio Apr. 11, 2017).

In 2013, Waagner filed an initial Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 for his criminal case at issue here.  Among other claims, he challenged his status as an armed career criminal in light of <u>Descamps v. United States</u>, 570 U.S. 254, 133 S. Ct. 2276 (2013).  Judge Baker denied the motion, and the Seventh Circuit dismissed Waagner's appeal for failure to pay the required docketing fee.  <u>Waagner v. United States</u>, Case No. 13-cv-2277 (C.D. Ill.), d/e 10, 19.

On June 6, 2016, after obtaining authorization from the Seventh Circuit to file a successive § 2255 motion, Waagner filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  As in his other cases, Waagner seeks to challenge his sentence in light of <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015).  The Court appointed the Federal Public Defender as counsel for Waagner.  The Federal

Public Defender filed a Memorandum of Law on August 18, 2016, (Doc. 5).

The Court Ordered the Government to respond, which it did on October 17, 2016 (Doc. 6). Waagner filed a reply on November 21, 2016 (Doc. 7). On April 27, 2017, Waagner filed a Motion to Cite Authority (Doc. 8), citing the Fourth Circuit's decision in Castendet-Lewis v. Sessions, 855 F.3d 253 (4th Cir. 2017), which held that Virginia statutory burglary under Va. Code § 18.2-91 is broader than generic burglary and is not divisible.

The Court also ordered supplemental briefing after the Supreme Court's decisions in United States v. Stitt, 139 S.Ct. 399 (2018), and Quarles v. United States, 139 S.Ct. 1872 (2019), which both addressed the scope of generic burglary. Waagner filed his supplemental brief on August 5, 2019 (Doc. 10). The Government has not filed a timely response. Additionally, the Court notes that Waagner's wife and children have submitted numerous letters in support (Docs. 11, 12, and 13). This Order follows.

## II. **ANALYSIS**

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Relief

under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Post-conviction relief under § 2255 is "appropriate for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks omitted).

Here, Waagner argues his ACCA sentence enhancement, pursuant to 18 U.S.C. § 924(e), is invalid in light of the Supreme Court's opinion in Johnson v. United States, 135 S. Ct. 2551 (2015), because he no longer has three predicate convictions for violent felonies. A person who violates 18 U.S.C. § 922(g) is an Armed Career Criminal if they have "three previous convictions . . . for a violent felony or serious drug offense." 18 U.S.C. § 924(e). Section 924(e)(2)(B) defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

(i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Clause (i) is known as the "elements clause." The first part of clause (ii) is known as the "enumerated offenses clause," and the part of clause (ii) that follows "otherwise" is known as the "residual clause." In <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), the Supreme Court held that the residual clause is unconstitutionally vague. 135 S. Ct. at 2563.

Waagner argues that his prior Ohio Aggravated Burglary convictions only qualified as violent felonies under the residual clause, so they can no longer be used as predicate offenses. Further, Waagner argues that his prior convictions for Ohio Attempted Robbery, Virginia Statutory Burglary, and Georgia Burglary are not violent felonies either. Accordingly, he argues he should not have been designated an Armed Career Criminal and subject to a mandatory minimum sentence of 15 years' imprisonment, but, instead, the otherwise applicable statutory range of zero to ten years' imprisonment.

In response, the Government argues that Waagner's claim is actually based on <u>Descamps v. United States</u>, 570 U.S. 254, 133 S.

Ct. 2276 (2013), and <u>Mathis v. United States</u>, 136 S. Ct. 2243 (2016), rather than <u>Johnson</u>. And, accordingly, the Government argues that Waagner is not entitled to relief because his claim does not raise a new rule of constitutional law as required by § 2255(h)(2), is procedurally defaulted, and is untimely. Additionally, the Government argues that Waagner's claim does not have merit because all of Waagner's five prior convictions remain violent felonies. The Court finds that Waagner's claim does rely on <u>Johnson</u>, but the Court agrees with the Government that Waagner still has at least three predicate convictions and remains an Armed Career Criminal. Accordingly, Waagner's Motion must be denied.

## A. Waagner's Claim that his Ohio Aggravated Burglaries are Not Violent Felonies Relies on <u>Johnson</u> and Can Proceed in a Successive § 2255 Motion.

The Government first argues that Waagner's claim is actually based on <u>Descamps v. United States</u>, 570 U.S. 254, 133 S. Ct. 2276 (2013), and <u>Mathis v. United States</u>, 136 S. Ct. 2243 (2016), rather than <u>Johnson</u>. This is so, the Government argues, because Waagner's prior offenses qualified as violent felonies under the elements or enumerated clause at the time of sentencing, which

Johnson did not impact.  And, his claims that his prior convictions no longer fall under the elements or enumerated clause relies on Mathis and Descamps, not Johnson.  Accordingly, the Government argues that Waagner is not entitled to relief because his claim fails to raise a new rule of constitutional law as required by § 2255(h)(2), is procedurally defaulted, and is untimely.

However, the Seventh Circuit's decision in Cross v. United States, 892 F.3d 288 (7th Cir. 2018), rejected a nearly identical argument.  The petitioners in Cross had been sentenced as career offenders under the mandatory sentencing guidelines.  Id. at 291.  In light of Johnson, the petitioners brought § 2255 motions and argued that the residual clause in the career offender guideline was unconstitutionally vague.  Id.  The Government argued that one of the petitioners' claims was actually based on an earlier case—Curtis Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010).  At the time of sentencing, the petitioner's conviction of simple robbery qualified under the elements clause, while after Curtis Johnson, his offense only qualified under the residual clause.  Cross, 892 F.3d at 297.  The Government argued that Curtis Johnson, rather than

_Johnson_, triggered the limitations period under § 2255(f)(3), and the petitioner's claim was now untimely. Id.

The Seventh Circuit, however, found that "[p]rior to _Johnson_, [the petitioner] had no basis to assert that his sentence was illegal and thus he could not claim a right to be released. _Curtis Johnson_ did not change that fact: all it did was to eliminate the elements clause as a basis for [petitioner's] status, which became entirely dependent on the residual clause. There matters stayed until _Johnson_. Only then could [the petitioner] file a nonfrivolous motion for relief." Id.

The Seventh Circuit also distinguished its earlier holding in _Stanley v. United States_, 827 F.3d 562, 565 (7th Cir. 2016), "which held that _Curtis Johnson_ rather than _Johnson_ triggered the limitation period under 2255(f)(3)." _Cross_, 892 F.3d at 298. The Seventh Circuit explained that, unlike in _Cross_, _Johnson_ was irrelevant to the predicate offense at issue in _Stanley_ because that offense had only ever been a predicate offense under the elements clause. Id.

The same reasoning is true here. Prior to _Johnson_, any argument based on _Descamps_ that Waagner's Ohio Aggravated

Burglary offenses were not violent felonies was frivolous. Even if
Descamps had made his convictions no longer qualify as violent
felonies under the enumerated clause, they remained violent
felonies under the residual clause. Indeed, Waagner brought a
§ 2255 motion based on Descamps, and it was denied for this very
reason. See Waagner v. United States, No. 13-cv-2277 (C.D. Ill.),
Order, d/e 10. It was not until Johnson that Waagner could "file a
nonfrivolous motion for relief." Of course, as explained below, the
Court now finds his Ohio Aggravated Burglary offenses are still
violent felonies under the enumerated clause. However, his
argument that he is not an Armed Career Criminal after Johnson is
far from frivolous, like it was before Johnson. And, before Johnson,
the state of law indicated that Waagner's Ohio Aggravated Burglary
convictions could be deemed violent felonies only under the residual
clause. The Court finds that the determination of whether
Waagner's prior offenses are violent felonies was necessarily
impacted by Johnson and that Waagner's claim, therefore, relies on
Johnson.

Because Waagner's claim relies on Johnson, the Court finds
that Waagner's claim is timely and can be raised on a successive

§ 2255 Motion.  Pursuant to § 2255(f)(3), a claim is timely if it is brought within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  The Supreme Court held that its holding in Johnson applied retroactively to cases on collateral review.  See Welch v. United States, 136 S. Ct. 1257, 1268 (2016) ("Johnson announced a substantive rule that has retroactive effect in cases on collateral review").  Therefore, Waagner, who brought his claim within one year of the Johnson decision, can attack the validity of his sentence in a § 2255 motion under Johnson.  Id.  Further, because Johnson is a new constitutional rule that has been made retroactive to cases on collateral review by the Supreme Court, Johnson meets the requirements for successive petitions under § 2255(h)(2).

Finally, the Court finds that Waagner's procedural default is excused.  If a defendant fails to raise a claim on direct review, he must show both cause and prejudice in order to raise the claim in post-conviction relief.  See Bousley v. United States, 523 U.S. 614, 622 (1998).  Waagner has established cause for failing to object at

trial. "[A] claim that 'is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910 (1984). At the time of Waagner's trial, direct appeal, and initial § 2255 motion, "no one—the government, the judge, or the [defendant]—could reasonably have anticipated Johnson." Cross v. United States, 892 F.3d 288, 295 (7th Cir. 2018) (quoting United States v. Synder, 871 F.3d 1122, 1127 (10th Cir. 2017)). Additionally, if Waagner's claim had merit, he would have established prejudice due to his enhanced prison sentence. Accordingly, the Court will not dismiss his claim for procedural default. However, the Court still finds that Waagner is not entitled to relief on the merits as described below.

## B. The Government is Not Estopped from Arguing Ohio Aggravated Burglary is Generic Burglary.

As an initial matter, in Waagner's supplemental briefing, he raises an additional argument that the Government should be estopped from arguing that Ohio Aggravated Burglary is a violent felony under the enumerated clause because the Government

conceded this point in Waagner's prior § 2255 motion and Judge

Baker agreed in his opinion.  While Waagner has raised an

interesting argument, the Court does not find that collateral

estoppel applies in this context.

"Collateral estoppel is generally said to have three purposes: to

'relieve parties of the cost and vexation of multiple lawsuits,

conserve judicial resources, and, by preventing inconsistent

decisions, encourage reliance on adjudication.'" <u>United States v.</u>

<u>Stauffer Chem. Co.</u>, 464 U.S. 165, 176 (1984) (White, J.,

concurring) ("[T]here is no justification for applying collateral

estoppel, which is a flexible, judge-made doctrine, in situations

where the policy concerns underlying it are absent . . . Preclusion

must be evaluated in light of the policy concerns underlying the

doctrine.").  The Supreme Court has held that the defensive use of

collateral estoppel can apply against the Government where: (1)

there is a mutuality of parties, (2) "the issue sought to be relitigated

was identical to the issue already unsuccessfully litigated" in

previous litigation, and (3) there has "been no change in controlling

facts or legal principles since" the previous litigation.  <u>Stauffer</u>

<u>Chem. Co.</u>, 464 U.S. at 169; <u>Montana v. United States</u>, 440 U.S.

147, 99 S. Ct. 97 (1979).  Here, while there is mutuality of parties and the facts remain unchanged, the Court finds that collateral estoppel does not apply because the issue was not necessarily decided and because the issue is one of law, not fact.

First, the Court finds that the issue was not necessarily decided in the previous litigation because the finding that Ohio Aggravated Burglary was or was not generic burglary was inconsequential to the judgment in the previous case.  See Bobby v. Bies, 556 U.S. 825, 834, 129 S. Ct. 2145, 2152 (2009) ("If a judgment does not depend on a given determination, relitigation of that determination is not precluded.").  The Government certainly conceded that Ohio Burglary does not meet the definition of generic burglary in its Response to Waagner's prior § 2255 motion.  See Waagner v. United States, No. 13-cv-2277 (C.D. Ill.), Gov't Resp. at 24, d/e 5 ("Waagner correctly observes that neither Ohio burglary statute meets the definition of generic burglary (i.e., 'unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime,' ). . . because it includes the burglary of habitations, like tents, that are not buildings or structures.") (internal citations omitted).  However, Judge Baker's Order did not

entirely adopt the Government's concession and did not directly answer the question as to whether Ohio Burglary or Ohio Aggravated Burglary could be a violent felony under the enumerated clause, but rather found that Ohio Burglary was a violent felony under the residual clause. Id., Order at 3-4, d/e 10. Due to this finding, it was not necessary to determine whether Ohio Aggravated Burglary was generic burglary, and, therefore, the Court finds that the issue was not necessarily decided.

Second, the arguments in favor of collateral estoppel are weaker when the issue to be precluded is an issue of law, as opposed to one of fact. This is because "reopening issues of law ordinarily is less burdensome than reopening issues of fact, and is more likely to produce improved results. The interests of courts and litigants alike can be protected adequately by the flexible principles of stare decisis." Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4425 (3d ed.). Here, the issue is purely law. And, importantly, the legal principles and the relevant case law relating to the legal issue of whether Ohio Aggravated Burglary is generic burglary have significantly changed since Waagner's previous § 2255 motion.

Indeed, if the legal principles had not changed, Waagner would not be able to bring his claim at all.

Moreover, in Light v. Caraway, 761 F.3d 809, 817 (7th Cir. 2014), the Seventh Circuit, while not addressing collateral estoppel, found that a petitioner was not entitled to rely only on law that had changed in his favor, while ignoring the law that had changed to his detriment. In Light, petitioner's criminal vehicular operation conviction no longer qualified as a violent felony in light of Begay v. United States, 553 U.S. 137, 139 (2008). Id. at 814. However, since his conviction, the Supreme Court had also decided Sykes v. United States, 564 U.S. 1 (2011), which made another of the petitioner's prior offenses—fleeing a peace office in a vehicle—qualify as a violent felony another the ACCA when it previously did not. Id. In rejecting the petitioner's due process argument against applying the latter precedent, the Seventh Circuit stated that "[w]e cannot see why Light is entitled to a one-way ratchet, subject only to changes in law that benefit him but immune from changes in law that are not helpful." Id. at 817. Similarly, Waagner is not entitled to take advantage of the legal principles that changed to make the Ohio Aggravated Burglary statute not a violent felony under the

residual clause, but ignore the legal precedent that now leads to the conclusion, as explained below, that Ohio Aggravated Burglary is a violent felony under the enumerated clause. Therefore, the Court finds that estoppel does not apply and will now turn to the merits of Waagner's claim.

## C. Generic Burglary Under the ACCA.

Waagner has four prior state law burglary convictions: two for Ohio Aggravated Burglary, one for Virginia Burglary, and one for Georgia Burglary. Waagner argues that none of these offenses are violent felonies under the ACCA because the state statutes are broader than generic burglary. The Supreme Court held in <u>Taylor v. United States</u>, 492 U.S. 575 (1990), that the term "burglary" as used in the enumerated clause of the ACCA means "generic burglary." Generic burglary includes the following elements: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." <u>Taylor</u>, 495 U.S. at 598.

To determine whether a predicate offense for burglary qualifies as generic burglary, courts use the categorical approach. <u>See Descamps v. United States</u>, 570 U.S. 254, 260, 133 S. Ct. 2276,

2283 (2013).  Under the categorical approach, courts look to: "whether the state conviction can serve as a predicate offense by comparing the elements of the state statute of conviction to the elements of the [generic offense]." United States v. Elder, 900 F.3d 491, 501 (2018) (citing Mathis v. United States, 136 S.Ct. 2243, 2248–49 (2016)).  "If state law defines the offense more broadly than the [ACCA], the prior conviction doesn't qualify as a [violent felony], even if the defendant's conduct satisfies all of the elements of the [ACCA] offense." United States v. Edwards, 836 F.3d 831, 833 (7th Cir. 2016).

If a state statute is overbroad, courts may use the modified categorical approach if the statute is divisible to consult certain documents to see which alternative formed the basis of the defendant's conviction.  See Descamps, 570 U.S. at 262.  The modified categorical approach is only appropriate where a statute is divisible into qualifying and non-qualifying offenses and does not apply to a crime that has a single, indivisible set of elements.  Id. at 263.  A divisible statute is one that lists elements in the alternative, and, in doing so, creates a separate crime associated with each alternative element.  Mathis, 136 S. Ct. at 2249.  When a statute

lists various factual means of committing a single element, the modified categorical approach does not apply.  Id. at 2248.

To determine whether a statute is divisible, courts look to see if there is:

> a decision by the state supreme court authoritatively construing the relevant statute[, which] will both begin and end the inquiry. . . . Absent a controlling state-court decision, the text and structure of the statute itself may provide the answer.  Failing those 'authoritative sources of state law,' sentencing courts may look to 'the record of a prior conviction itself' for the limited purpose of distinguishing between elements and means.

Edwards, 836 F.3d at 836 (citing Mathis, 136 S. Ct. at 2256). Waagner argues all four of his burglary convictions are broader than generic burglary, and none of the statutes are divisible.

### D. Ohio Aggravated Burglary is Generic Burglary.

Waagner's status as an Armed Career Criminal at sentencing relied, in part, on his two 1978 convictions for Ohio Aggravated Burglary.  Prior to Johnson, the Sixth Circuit had held that Ohio's general burglary statute was only a violent felony under the residual clause.  See United States v. Coleman, 655 F.3d 480, 482 (6th Cir. 2011); United States v. Lane, 909 F.2d 895, 902 (6th Cir. 1990).  After Johnson, with the residual clause invalid, Waagner

argues that Ohio Aggravated Burglary is not categorically a violent

felony because the statute is broader than generic burglary and it is

not divisible.

At the time of Waagner's convictions, the Ohio Aggravated

Burglary statute read:

> § 2911.11 Aggravated burglary
>
> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;
>
> (3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

Ohio Rev. Code § 2911.11; Pet. Ex. A (Doc. 5-1). And, in 1978,

occupied structure was defined as:

> any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;

(B) Which at the time is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;

(C) Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present;

(D) In which at the time any person is present or likely to be present.

Ohio Rev. Code § 2909.01; Pet. Ex. A (Doc. 5-1).

Waagner argues that the statute is broader than generic burglary because the definition of occupied structure covers locations other than buildings.  Pet. Memo. at 8 (Doc. 5).  The Sixth Circuit has previously held that the Ohio's <u>general</u> burglary statute is broader than generic burglary for this very reason.  <u>See</u> <u>United States v. Coleman</u>, 655 F.3d 480, 482 (6th Cir. 2011) ("Ohio's third-degree burglary statute sweeps more broadly than generic burglary because it 'includ[es] places, such as automobiles and vending machines, other than buildings.'") (internal citations omitted); <u>United States v. Lane</u>, 909 F.2d 895, 902 (6th Cir. 1990) ("Because

Ohio's burglary statute includes places other than buildings, it is broader than the Supreme Court's generic definition of burglary.").

However, the Sixth Circuit cases did not address the aggravated burglary statute at issue here, Ohio Rev. Code § 2911.11(A)(3). The Court notes that while Waagner argues the definition of occupied structure under Ohio Rev. Code § 2909.01 was not divisible, he does not appear to argue that the subsections listed in the Aggravated Burglary statute, Ohio Rev. Code § 2911.11, are not divisible. See Pet. Memo at 8 (Doc. 5) ("The aggravated burglary statute is not divisible . . . because the locational element is entry into an "occupied structure" with the listed locations being different means of establishing the occupied structure element."). Even if he had, the Court finds that the statute text, as well as state case law, show that subsections (1), (2), and (3) of Ohio Rev. Code § 2911.11(A) list alternative elements that the state must prove, not alternative means. See State v. Wilson, 58 Ohio St. 2d 52, 58, 388 N.E.2d 745, 750 (1979) ("In proving burglary the state need only prove that the structure was a permanent or temporary habitation, or a structure in which any person is present or is likely to be present. It need not prove both.

In aggravated burglary, under R.C. 2911.11(A)(3), the state must shoulder the additional burden of proving both."). And, there does not appear to be any dispute that Waagner was convicted under § 2911.11(A)(3). <u>See</u> PSR ¶¶48, 49 (recounting that the indictments in both cases charged Waagner with burglary of "an occupied structure, the permanent or temporary habitation of [victim], at a time any person was present or likely to be present"); Resp. at 25 (Doc. 7); <u>see</u> <u>also</u> <u>United States v. Waagner</u>, No. 1:02-CR-007, 2017 WL 1324608, at *1 (S.D. Ohio Apr. 11, 2017) (noting that "the Answer of the United States attached the indictments in [Waagner's] two cases which show that Mr. Waagner was convicted in them of aggravated burglary in violation of Ohio Revised Code § 2911.11(A)(3).").

Unlike the general burglary statute, Ohio Aggravated Burglary under § 2911.11(A)(3) contains the additional limiting language that "the occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present." <u>Id.</u> Drawing on this additional element, district courts in Ohio have found that Ohio Aggravated Burglary under § 2911.11(A)(3) qualifies as generic burglary, regardless of

the structure being burglarized.  See, e.g., United States v. Barclay, 2016 WL 3753088 (N.D. Ohio 2016); United States v. Waagner, No. 1:02-CR-007, 2017 WL 1106361, at *2 (S.D. Ohio Mar. 24, 2017), report and recommendation adopted, No. 1:02-CR-007, 2017 WL 1324608 (S.D. Ohio Apr. 11, 2017) (recommending denial of Waagner's § 2255 motion for his conviction in the Southern District of Ohio, and collecting cases from both the Southern and Northern District of Ohio that had held Ohio Aggravated Burglary is generic burglary).  However, a court in the Southern District of West Virginia came to the opposite conclusion, finding that Ohio Aggravated Burglary was not generic burglary because the occupied structure element "includes places beyond those enumerated in Taylor."  Slucarszyk v. United States, No. 3:03-CR-00102-1, 2018 WL 4381274, at *7 (S.D.W. Va. July 13, 2018), report and recommendation adopted, No. 3:03-CR-00102-1, 2018 WL 4054756 (S.D.W. Va. Aug. 24, 2018).

While Waagner argued in his reply that the court's interpretation in Barclay[1] was incorrect, the Supreme Court's recent

---

[1] Only Barclay had been decided at the time of Waagner's reply.

decision in <u>United States v. Stitt</u>, 139 S. Ct. 399 (2018), provides additional guidance as to the scope of the "building or other structure" element of generic burglary, and indicates that the Ohio courts' conclusions are correct. In <u>Stitt</u>, the Supreme Court examined the Tennessee and Arkansas burglary statutes and held that burglary of a structure or a vehicle that has been adapted or is customarily used for overnight accommodation falls within the definition of generic burglary. <u>Id.</u> at 406. <u>Stitt</u>'s holding relied on <u>Taylor</u>'s finding that "Congress intended the definition of "burglary" to reflect "the generic sense in which the term [was] used in the criminal codes of most States" at the time the Act was passed." <u>Id.</u> And, in 1986, when the ACCA was enacted, "a majority of state burglary statutes covered vehicles adapted or customarily used for lodging—either explicitly or by defining "building" or "structure" to include those vehicles." <u>Id.</u>

<u>Stitt's</u> holding also relied on Congress's view, as recounted in <u>Taylor</u>, that burglary is "an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.'" <u>Stitt</u>, 139 S. Ct. at 406 (citing <u>Taylor</u>, 495

U.S. at 588).  And, burglary of a structure that is adapted for or

customarily used for lodging, whether it be of a mobile home, RV,

tent, vehicle, or another structure, "runs a similar or greater risk of

violent confrontation."  Id.

However, the Supreme Court made clear that its holding in

Stitt was not inconsistent with its holdings and statements in

Taylor, Mathis, and other cases that found "burglary of certain

nontypical structures of vehicles fell outside the scope of" generic

burglary.  Stitt, 139 S. Ct. at 407.  While Taylor had "referred to a

Missouri breaking and entering statute that among other things

criminalized breaking and entering 'any boat or vessel, or railroad

car,'" that statute did not restrict "its coverage . . . to vehicles or

structures customarily used or adapted for overnight

accommodation."  Id.  Similarly, while the Iowa statute at issue in

Mathis was found not to be generic burglary because it covered

"any building, structure, . . . land, water or air vehicle, or similar

place adapted for overnight accommodation of persons [or used] for

the storage or safekeeping of anything of value," ordinary vehicles

were included in this definition as they could be used for storage or

safekeeping.  Id. at 407 (citing Mathis, 136 S. Ct. at 2250).

Importantly for this case, <u>Stitt</u> left open the question of whether the Arkansas residential burglary statute at issue was overbroad due to its coverage of burglaries in "a vehicle . . . [i]n which any person lives," and remanded that issue to the Eighth Circuit. <u>Id.</u> Respondent Sims argued that "these words might cover a car in which a homeless person occasionally sleeps." <u>Id.</u> Waagner argues in supplemental briefing that the Ohio Aggravated Burglary statute is still overbroad after <u>Stitt</u> because it could also cover ordinary vehicles.

On remand, however, the Eighth Circuit found that Arkansas residential burglary was generic burglary. <u>United States v. Sims</u>, No. 16-1233, 2019 WL 3789294, at *3 (8th Cir. Aug. 13, 2019). The Eighth Circuit found that the majority of states' burglary statutes included similarly defined locations in 1986, which indicated that the statute fell within the definition of generic burglary. <u>Id.</u> The Eighth Circuit agreed with Sims that "the statute's plain language arguably applies to an intrusion into an ordinary vehicle in which a homeless person is living even if it has not been modified for residential use." <u>Id.</u> at *3. However, the Eighth Circuit found that the Supreme Court in <u>Stitt</u> had focused on the risk of violence a

burglary presents, not whether the offender was necessarily on notice that someone was living in the structure.  Id. (citing Stitt, 139 S. Ct. at 407).  Moreover, the Eighth Circuit noted that burglary of a vehicle not used for residential purposes is covered in a separate Arkansas statute.  Id.

Additionally, after Stitt, other courts across the country have found that similarly worded statutes fall within the definition of generic burglary.  See, e.g., Walker v. United States, No. 4:02-CR-00161-RK, 2019 WL 2505046, at *5 (W.D. Mo. June 17, 2019) (finding Missouri second-degree burglary, which included "burglary of a structure or vehicle in which people are located or are customarily located," was generic burglary, and that excluding such burglaries "would mean burglaries often posing a greater risk than burglary of a building or house would be eliminated as predicate offenses"); Edmonds v. United States, No. 3:16-CV-1835-S, 2019 WL 3024649, at *2 (N.D. Tex. July 11, 2019) (holding New York's second-degree burglary statute was generic burglary because "[a] burglary involving a vehicle or structure used for lodging or business involves a similar risk of violent confrontation as a

burglary of a vehicle or structure adapted or designed for lodging or business use").

Here, Ohio Aggravated Burglary, like Arkansas residential burglary, could <u>arguably</u> cover an ordinary vehicle in which a homeless person was living. Therefore, the Court finds that <u>Stitt</u> did not foreclose the possibility that the statute is overbroad. However, the Court agrees with the Eighth Circuit's reasoning in <u>Sims</u> and finds that the Eighth Circuit's reasoning applies with equal force to the Ohio Aggravated Burglary statute. A conviction under Ohio Rev. Code § 2911.11(A)(3) requires the state to prove both that the occupied structure be a habitation <u>and</u> that someone is present or likely to be present. <u>See also</u> <u>State v. Wilson</u>, 58 Ohio St. 2d 52, 59, 388 N.E.2d 745, 750 (1979) ("The aggravated burglary statute, by its own terms, requires two elements of proof, permanent or temporary habitation and presence or likelihood of presence. This additional element of proof placed upon the state as part of its burden of proof clearly distinguishes the crime from simple burglary."). The Court finds these elements sufficiently limit Ohio Aggravated Burglary under Ohio Rev. Code § 2911.11(A)(3) to those instances where there is a significant risk of a "violent

confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." <u>Stitt</u>, 139 S. Ct. 406 (internal citations omitted).  While the "occupied structure" under Ohio law could include a vehicle, <u>Stitt</u> shows that inclusion of vehicles and other nontypical structures does not by itself make the statute overbroad when there is additional limiting language.

By contrast, the Missouri burglary statute discussed in <u>Taylor</u> had no such limiting language, but instead applied to "<u>any</u> boat or vessel, or railroad car," regardless of whether these structures were being used as a habitation or whether someone was present or likely to be present.  And the Iowa burglary statute at issue in <u>Mathis</u> applied to burglaries of vehicles and other structures that are used for the storage or safekeeping of anything valuable, but did not provide any further limiting language.  Accordingly, the Court finds that the Ohio Aggravated Burglary under Ohio Rev. Code § 2911.11(A)(3) is distinguishable from the statutes discussed in <u>Taylor</u> and <u>Mathis</u>, and falls within the definition of generic burglary as clarified by <u>Stitt</u>.  Waagner's two convictions for Ohio Aggravated Burglary, therefore, give him two predicate violent felonies under the ACCA.

### E. Waagner's Virginia and Georgia Burglaries are Not Violent Felonies After <u>Johnson</u>.

Waagner also has additional burglary convictions under Virginia and Georgia law. These convictions were not relied upon in finding Waagner an Armed Career Criminal at sentencing, but the Government argues they qualify as additional violent felonies under the ACCA under the enumerated clause. The Court does not agree.

Waagner was convicted of Virginia statutory burglary in 1976. The parties agree that his conviction was most likely in violation of Va. Code Ann. 18.2-91. In 1975, Va. Code Ann § 18.2-91, read:

> Entering dwelling house, etc., with intent to commit larceny or other felony. - If any person do any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be deemed guilty of statutory burglary . . . .

Va. Code Ann § 18.2-91. And Virginia Code § 18.2-90 read:

> Entering dwelling house, etc., with intent to commit murder, rape or robbery. - If any person in the nighttime enter without breaking or in the daytime break and enter a dwelling house or an outhouse adjoining thereto and occupied therewith or in the nighttime enter without breaking or break and enter either in the daytime or nighttime any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, If such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to

> commit murder, rape or robbery, he shall be deemed
> guilty of statutory burglary . . .

Virginia Code § 18.2-90.

The Government first argues that the Virginia burglary statute is "essentially limited" to places of human habitation, and, therefore, falls within the generic definition of burglary. Resp. at 28 (Doc. 6). The text of the statute refutes this argument. While automobiles, trucks, and trailers only fall under the statute if they are "place[s] of human habitation," the statute also covers "any ship, vessel or river craft or any railroad car." And these later terms do not contain the qualification that they must be "place[s] of human habitation." Unlike the statutes at issue in Stitt, and unlike Ohio Aggravated Burglary, there is no qualifying language that would limit these structures to those locations that run a greater risk of violence. See Stitt, 139 S. Ct. at 406. Instead it covers the exact type of nontypical structures that the Supreme Court found to fall outside the scope of generic burglary in Taylor and Mathis. See also, Castendet-Lewis v. Sessions, 855 F.3d 253, 264 (4th Cir. 2017) (and finding the Virginia burglary statute is indivisible and not generic burglary); United States v. Reyes-Ochoa, 861 F.3d 582,

587 (5th Cir. 2017) (concurring with Castendent-Lewis and holding Virginia burglary is not generic burglary and is indivisible).

The Government also argues that the statute is divisible and subject to the modified categorical approach. Prior to Descamps and Mathis, the Fourth Circuit, in United States v. Foster, 662 F.3d 291, 296 (4th Cir. 2011), had held that the statute was divisible. However, Foster is no longer good law in light of Descamps and Mathis. See Castendet-Lewis, 855 F.3d at 264 (overturning Foster). In Castendet-Lewis, the Fourth Circuit found that the language of the Virginia burglary statute clearly "provides a list of locations— each of which would qualify as an element of statutory burglary." Id. at 264. And, the Supreme Court of Virginia has found that the locational terms were interchangeable. Id. (citing Graybeal v. Commonwealth, 228 Va. 736, 740, 324 S.E.2d 698, 700 (1985)). The Court agrees with the reasoning of the Fourth Circuit and finds that Virginia Burglary is not generic burglary, and, therefore, does not qualify as a violent felony under the ACCA.

The statute defining Waagner's Georgia burglary conviction is not very different structurally, and the Court finds that the Georgia burglary statute is also broader than generic burglary and not

divisible.  At the time of Waagner's conviction, the Georgia Burglary

statute read as follow:

> A person commits burglary when, without authority and
> with the intent to commit a felony or theft therein, he
> enters or remains within the dwelling house of another or
> any building, vehicle, railroad car, aircraft, watercraft, or
> other such structure designed for use as the dwelling of
> another, or enters or remains within any other building,
> railroad car, aircraft, or any room or any part thereof. . . .

Ga. Code 26-1601 (1978); Georgia Law 1978, Pg. 236, Section 1

(enacted March 2, 1978) (available online at

http://metis.galib.uga.edu/ssp/cgi-bin/legis-idx.pl).

Like Virginia burglary, the plain text of the statute includes

more than generic burglary as it encompasses an offender who

"enters or remains within any other building, railroad car, aircraft,

or any room or any part thereof."  The Government conceded this

issue in its response.

The Government argues, however, that the statute is divisible

by the list of locations.  A circuit split has developed on this issue

since Mathis.  First, the Eleventh Circuit in United States v. Gundy,

842 F.3d 1156, 1168 (11th Cir. 2016), held that the Georgia

burglary statute and the controlling state law interpreting the

statute conclusively show that the statute is divisible and the

different locations listed are different means.  Next, the Sixth

Circuit, in <u>Richardson v. United States</u>, 890 F.3d 616, 622 (6th

Cir.), <u>reh'g denied</u> (June 4, 2018), <u>cert. denied,</u> 139 S. Ct. 349

(2018), disagreed with <u>Gundy's</u> conclusion that the Georgia law was

clear on the issue, but "peeked" at the records in the defendant's

case and determined that the locations listed were elements.  Most

recently, however, the Fourth Circuit in <u>United States v. Cornette</u>,

932 F.3d 204, 213 (4th Cir. 2019), has disagreed with both circuits

and found that the Georgia law conclusively shows that the statute

is not divisible.  <u>See</u> <u>also</u> <u>United States v. Hamilton</u>, 889 F.3d 688,

697, n.9 (10th Cir. 2018) (disagreeing with the conclusion in <u>Gundy</u>

to the extent the Georgia statute resembles the Oklahoma statute at

issue).

Here, the Court finds that the Fourth Circuit's recent

consideration of the statute is both more persuasive and more in

line with Seventh Circuit precedent.  The Court agrees with the

Fourth Circuit that the text of the statute, while setting forth a

disjunctive list of types of locations to be burglarized, appears to list

"illustrative examples" rather than alternative elements.  The

subsections "simply identify several different ways of describing a

particular location." United States v. Edwards, 836 F.3d 831, 837

(7th Cir. 2016). Like the Wisconsin statute at issue before the

Seventh Circuit in Edwards, the statutory alternatives are similar

and overlapping, indicating that only one element is being

described. Id. Moreover, the statute defines only one crime and

does not detail different penalties for different locations. See

Edwards, 836 F.3d at 837; United States v. Haney, 840 F.3d 472,

475–76 (7th Cir. 2016).

As the Fourth Circuit explained, Georgia state court precedent

regarding jury instructions confirms that the statute lists

alternative means:

> Georgia courts have repeatedly upheld jury instructions where
> a jury was entitled to find entry into either a "dwelling house
> or building," with no unanimity requirement on those
> alternatives. In Hart v. State, the Georgia Supreme Court held
> that such a jury instruction was "sufficient to inform the jury
> of the essential elements of the offense." 238 Ga.App. 325, 517
> S.E.2d 790, 793 (1999). Significantly, the indictment
> in *Hart* charged entry into a "dwelling house," a term used in
> the burglary statute, but the jury was not required to agree
> that the location burgled was indeed a "dwelling house." *Id.* at
> 792; see also Long v. State, 307 Ga.App. 669, 705 S.E.2d 889
> (2011) (upholding jury instruction with identical location
> element as "complete and correct"). The lack of a jury
> unanimity requirement on the type of location burgled
> indicates that burglary includes multiple alternative means as
> opposed to elements, and so is an indivisible offense.

<u>Cornette</u>, 932 F.3d at 212.

In <u>Gundy</u>, the Eleventh Circuit found it significant that Georgia law requires prosecutors to charge the "specific location" burglarized and that the prosecution is required to prove the specific location burglarized.  See <u>Gundy</u>, 842 F.3d at 1167. However, as the Fourth Circuit explained in <u>Cornette</u>, "[w]hile Georgia law does require prosecutors to charge 'the specific location' burgled . . . there is no analogous requirement that prosecutors charge or prove the <u>type</u> of location burgled."  <u>Cornette</u> 932 F.3d at 212 (<u>citing</u> <u>Morris v. State</u>, 166 Ga.App. 137, 303 S.E.2d 492, 494 (1983) (stating that an indictment "must specify the location of the burglary" in order "to give the defendant ample opportunity to prepare a defense"); <u>see</u> <u>also</u> <u>Gundy</u>, 842 F.3d at 1176 (Jill Pryor J., dissenting); <u>Richardson</u>, 890 F.3d at 626 (finding indictment requirements were instructive, but noting that "they do not definitively establish that the specified burglary locations are alternative elements of the offense").  Accordingly, the Court finds that Waagner's Georgia and Virginia burglary convictions are not for generic burglary and do not qualify as additional predicate convictions for violent felony under the ACCA.

**F. Ohio Attempted Robbery is a Violent Felony Under the Element's Clause of the ACCA.**

While the Court finds that Waagner's argument that his burglary convictions are not violent felonies relies on <u>Johnson</u>, the same is not as easily said for Waagner's 1992 conviction for Ohio Attempted Robbery in violation of Ohio Rev. Code. § 2911.02(A). Therefore, it is not clear whether he has any basis to challenge the use of this conviction as an ACCA predicate in a successive § 2255 motion. Assuming that a basis exists, the Court finds that Ohio Attempted Robbery still qualifies as a violent felony under the elements clause of the ACCA.

At the time of Waagner's conviction in 1992, the Ohio robbery statute read: "No person, in attempting or committing a theft offense . . . shall use or threaten the immediate use of force against another." Ohio Rev. Code. § 2911.02(A). Additionally, Ohio Rev. Code § 2923.02 defined the crime of "Attempt": "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." A "criminal attempt" occurs when "one purposely does or

omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." State v. Woods, 48 Ohio St.2d 127, 127, 357 N.E.2d 1059 (1976).

Waagner argues that his conviction was not a violent felony because an attempt to commit robbery under the Ohio statute does not necessarily involve "the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). However, since initial briefing concluded in this case, the Seventh Circuit held that "[w]hen a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony." See Hill v. United States, 877 F.3d 717, 719 (7th Cir. 2017), cert. denied, 139 S. Ct. 352, 202 L. Ed. 2d 249 (2018).

Here, the Court finds that the crime Waagner attempted to commit, Ohio Robbery, is a violent felony under the ACCA because the statute includes as an element that the individual "shall use or threaten the immediate use of force against another." Ohio Rev. Code § 2911.02(A). Moreover, Waagner's brief also appears to agree that the offense of robbery itself is a violent felony under the force

clause.  See Pet. Memo. at 23 (Doc. 5) ("There is no doubt that a person convicted of an Ohio attempted robbery must have been prepared to use force as he must have had the intent to commit a robbery, which requires the use, attempted use, or threatened use of force, and take a substantial step towards committing the robbery.").  Accordingly, the Court agrees with the Sixth Circuit and other courts that have found Ohio robbery is a violent felony.  See United States v. Sanders, 470 F.3d 616, 623-24 & n.6 (6th Cir. 2006) (holding that a robbery conviction under Ohio Rev. Code § 2911.02(A) qualified as a violent felony); United States v. Mansur, 375 Fed. Appx. 458, 464 (6th Cir. Mar. 25, 2010) (unpublished) (Ohio attempted robbery conviction qualified as violent felony under the use-of-force clause of ACCA); United States v. McCauley, No. 3:06-CR-154, 2013 WL 4671301, at *3 (S.D. Ohio Aug. 30, 2013), report and recommendation adopted, No. 3:06-CR-154, 2013 WL 5707853 (S.D. Ohio Oct. 18, 2013).

Therefore, the Court finds that Waagner's Ohio Attempted Robbery conviction remains a violent felony.  Combined with his two convictions for Ohio Aggravated Burglary, Waagner still has the requisite three prior convictions for violent felonies for him to

qualify as an Armed Career Criminal under § 924(e). Accordingly, he is not entitled to relief and his § 2255 motion must be denied.

### III. **CERTIFICATE OF APPEALABILITY**

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability. See 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000).

Here, the Court finds that a reasonable jurist could debate whether Ohio Aggravated Burglary is generic burglary. The Supreme Court's decision in Stitt left open the possibility that that statutes such as Ohio Aggravated Burglary, which "might cover a car in which a homeless person occasionally sleeps," could fall outside the definition of generic burglary, and the Seventh Circuit

has not yet spoken on the issue.  Accordingly, the Court finds that Waagner has made a substantial showing of the denial of a constitutional right.  The Court will issue a certificate of appealability.

## IV.  **CONCLUSION**

For the reasons stated, Petitioner Clayton Lee Waagner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1) is DENIED.  The Court ISSUES a certificate of appealability.  This case is CLOSED.

ENTER: September 12, 2019

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE